UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 12-15-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| DAVID JASON JENKINS and ) | |
| ANTHONY RAY JENKINS, ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Every case begins with a story. Here, much of that story is uncontested. All agree that on a dark night, in the spring of 2011, Kevin Pennington was physically and brutally assaulted on a deserted road in Kingdom Come State Park by Jason and Anthony Jenkins. The jury saw photographs of Mr. Pennington's injuries and heard the fear in his voice during a desperate call to 911 for help. No one deserves to be harmed that way for any reason.

But this is not a case about "any reason." For the first time in the nation, the government sought to hold defendants responsible for committing this crime "because of" one particular reason – the admitted sexual orientation of the victim. Here, the victim is gay. And at the end of many days of testimony, the jury decided that the government had failed to prove that these defendants committed that crime.[1]

---

[1] Though the defendants were acquitted of the Hate Crime charge, they were found guilty of the Kidnapping and Conspiracy to Kidnap charges. [R. 138, R.139].

While this is the first such prosecution in the country, as explained below, Congress has seen fit to enact any number of statutes over the years that hold a person accountable for treating a person violently or adversely for an impermissible reason. Whether it is race, religion, gender, age or, now sexual orientation, courts have been called upon to instruct juries on what it means to commit an act "because of" one of these factors. As the instruction on this point was the subject of much debate between the parties, the Court issues this Memorandum Opinion to set forth formally, and develop more fully, its previously articulated reasoning for choosing the construction provided to the jury.[2]

I

The simple phrase "because of" means many different things to many different judges. As an initial matter, "because of" has been clarified to mean "a motivating factor" in the Title VII context. The version of Title VII that was enacted as part of the Civil Rights Act of 1954 made it unlawful "for an employer to discriminate against any individual…*because of* such individual's race, color, religion, sex, or national origin." Pub.L. No. 88-352, § 703 (emphasis added). After some disagreement among the Justices of the Supreme Court on how to interpret this statute, in the Civil Rights Act of 1991, Congress clarified its meaning. In the current language of Title VII, a plaintiff establishes an unlawful employment practice by showing that the prohibited reason was "a motivating factor" of the unlawful employment practice. 42 U.S.C. § 2000e-2(m).

---

[2] The authorities and reasoning contained herein supplement the ruling on this issue at the charge conference in advance of submission of the final instructions to the jury. [R. 147].

In a mixed motive context, once this showing has been made, the burden shifts and a limitation of remedies is available only if the employer can prove that he or she would have taken the employment action irrespective of the prohibited reason. 42 U.S.C. § 2000e-5(g)(2)(B). At the charge conference in this case, the Government noted that a court in the Fifth Circuit had used the "a motivating factor" language as the standard for measuring "because of" in 18 U.S.C. § 249(a)(2).[3] In its proposed jury instructions, the Government initially recommended that this Court likewise adopt the "a motivating factor" standard.[4]

But Title VII is not the only statutory section informing the meaning of "because of." The predecessor statute to the HCPA forbade the interference with a person's participation in certain federally protected activities "because of his race, color, religion, or national origin." 18

---

[3] At the charge conference the government stated:

> I can tell Your Honor that there is another hate crimes prosecution. I'm not sure if you were able to pull this up, but it's a case in Texas…I just called the attorney who did it from my office and asked what was the jury instruction...in that 249 prosecution, the jury was instructed that they have to find that the defendants acted because of the defendant's race, that it was a motivating factor, that it didn't matter if the defendant had additional reasons, and the government did not have to prove that race was the sole motivating factor.

[See, Transcript of Charge Conference to be Filed].

[4] The proposed jury instruction submitted by the government to this Court reads in relevant part as follows:

> Because of the Actual or Perceived Sexual Orientation: The Government must prove beyond a reasonable doubt that Kevin Pennington's actual or perceived sexual orientation was a motivating factor for a defendant's actions. If you find that the defendant acted because of Kevin Pennington's actual or perceived sexual orientation, you may find this element met regardless of the Defendant's sexual orientation. The law prohibits an assault motivated by the victim's actual or perceived sexual orientation, even if the Defendant shares the same sexual orientation as the victim. If you find that the assault alleged in the Indictment was motivated by the actual or perceived sexual orientation of Kevin Pennington, you may find this element satisfied even if he had other reasons for doing what he did. In other words, the fact that the defendant may have had other motives for his conduct does not make that conduct any less a violation of the provisions of law implicated by Count Three, as long as he acted in significant part because of Kevin Pennington's actual or perceived sexual orientation.

[R. 85 at 9]

3

U.S.C. § 245(b)(2). In interpreting the appropriate standard under this statute, the Sixth Circuit has stated, "the law provides that so long as racial animus is *a substantial reason* for a defendant's conduct, other motivations are not factors to be considered." *United States v. McGee*, 173 F.3d 952, 957 (6th Cir. 1999) (emphasis added) (citing *United States v. Ebons*, 800 F.3d 1422, 1429 (6th Cir. 1986), abrogated on other grounds by *Huddleston v. United States*, 485 U.S. 681 (1988)). Though the "a substantial reason" standard does seem to be a higher bar than "a motivating factor," it does not require the specific intention to violate federal law to be, "the first among several evil intents." *Ebons*, 800 F.3d at 1429 (citing *United States v. Bledsoe*, 728 F.2d 1094 (8th Cir. 1984)).

In adopting the "a substantial reason" standard, the Sixth Circuit relied upon the decision of the Eighth Circuit in *Bledsoe*. In that case, the Eighth Circuit considered the propriety of the following jury instruction concerning § 245(b):

> You are instructed that every citizen, regardless of race, color, religion or national origin, has the right to enjoy the public parks. If you find beyond a reasonable doubt that Penn Valley Park was administered by the city of Kansas City, Missouri, and that the defendant willfully injured, intimidated, or interfered with Stephen Harvey because he was a black man and he was using Penn Valley Park, this element of the offense would be established. Furthermore, if you find that the defendant had the motivation I have just described, the offense charged would be complete even the defendant had other reasons for doing what he did, such as personal anger or hatred for homosexuals, or a desire to commit robbery. In other words, the presence of other motives, given the existence of the defendant's motive to interfere with the victim's use of the park, does not make the conduct any less a violation of 18 United States Code 245.

*Bledsoe*, 728 F.2d at 1098. The Court approved of the use of this instruction stating, "The clear implication from these instructions is that a substantial motivating factor must have been race…[t]he additional information concerning the possible presence of other motivating factors simply restates the law on mixed motives." *Id*. (citations omitted).

Citing *Bledsoe*, the Eighth Circuit imported the "a substantial motivating factor" standard to its analysis of HCPA § 249 in *United States v. Maybee*, 687 F.3d 1026 (8th Cir. 2012). Specifically, the court stated, "based on this evidence, a reasonable jury could have concluded that the race or national origin of the occupants of the sedan was 'a substantial motivating factor' in Maybee's decision to pursue the sedan and force it off the highway." *Maybee*, 687 F.3d at 1032. In this case, the government argued at the charge conference that this Court is likewise required to import the Sixth Circuit's "a substantial reason" standard from its § 245 jurisprudence to the new HCPA § 249. In addition, the government's proposed jury instructions utilized, almost verbatim, the mixed motive language from *Bledsoe*.

Still yet another standard has been employed by a court to measure the "because of" language of HCPA § 249. In *United States v. Mullet*, 2012 WL 2330905 (N.D. Ohio May 31, 2012), the court used the following jury instruction to assist the jury in understanding "because of" the actual or perceived religion:

> The Government must prove beyond a reasonable doubt that a person's actual or perceived religion was a significant motivating factor for a defendant's actions. If, in fact, you find that a defendant was significantly motivated by the actual or perceived religion of a person in committing an assault as alleged in the Superseding Indictment, you may find that the defendant committed the charged offense even if he or she had other reasons for doing what he or she did as well. In other words, the fact that a defendant may have had other motives for his or her conduct does not make that conduct any less a violation of the provisions of law implicated by Counts Two through Six. In determining whether the government has proved that a defendant acted as he or she did because of a person's actual or perceived religion, you may consider statements made or language used by the defendant, the circumstances surrounding the alleged offense, and all other evidence that may shed light on the defendant's motives.

In this instruction, the court appears to have borrowed heavily from mixed motive instructions like *Bledsoe*. However, this instruction does not interpret "because of" to require "a motivating factor" or "a substantial factor." Instead, the *Mullet* court instructed the jury that the animus

5

against religion must be "a significant motivating factor," of the assault. The Court assumes that the government's proposed jury instruction submitted to this Court before trial was influenced by the construction of the instructions given in *Mullet*. Though the government's instruction began with the "a motivating factor" standard, it included the mixed motive language and concluded by stating, "the fact that a Defendant may have had other motives for his conduct does not make that conduct any less a violation of the provisions of law implicated in Count Three, as long as he acted in *significant part* because of Kevin Pennington's actual or perceived sexual orientation." [R. 85] (emphasis added).

Though the standards used to measure the previous and current hate crime statutes would ordinarily be conclusive, a recent decision of the United States Supreme Court casts some doubt on the outcome of the aforementioned decisions. In *Gross v. FBL Financial Services*, *Inc.* 557 U.S. 167 (2009), the Supreme Court considered the meaning of "because of" in the context of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(2). The ADEA makes it unlawful for an employer to take adverse action against an employee, "because of such individual's age." 29 U.S.C. § 623(a). Applying the standard used in Title VII cases, the district court instructed the jury that they could find that the adverse employment action was taken because of the plaintiff's age if age was "a motivating factor" in the defendant's decision to demote him. *Gross,* 557 U.S. at 171. In determining whether the standard given was appropriate, the United States Supreme Court engaged in an analysis of the general meaning of the words "because of," which is set out in full below.

> The words "because of" mean "by reason of: on account of." 1 Webster's Third New International Dictionary 194 (1966); see also 1 Oxford English Dictionary 746 (1933) (defining "because of" to mean "By reason *of*, on account *of* " (italics in original)); The Random House Dictionary of the English Language 132 (1966) (defining "because" to mean "by reason; on account"). Thus, the ordinary

6

> meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act. See *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process *and had a determinative influence on the outcome*" (emphasis added)). To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. See *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, ——, 128 S.Ct. 2131, 2141–2142, 170 L.Ed.2d 1012 (2008) (recognizing that the phrase, "by reason of," requires at least a showing of "but for" causation (internal quotation marks omitted)); *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63–64, and n. 14, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (observing that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition" and that the statutory phrase, "based on," has the same meaning as the phrase, "because of" (internal quotation marks omitted)); cf. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 265 (5th ed. 1984) *177 ("An act or omission is not regarded as a cause of an event if the particular event would have occurred without it").

*Gross,* 557 U.S. at 176-77. The Court recognized that Congress had utilized the "a motivating factor" standard and the burden shifting framework in the Title VII context, but as no such amendment had been provided by Congress for the ADEA, the normal meaning of 'because of' should govern. *Gross* 557 U.S. at 174-75. The Court concluded that, "under § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action." *Id.* at 177.

The Sixth Circuit recently applied the Supreme Court's decision in *Gross* to the Americans with Disabilities Act ("ADA") context in *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc). The ADA prohibits discrimination "because of" the disability of the employee. 42 U.S.C. § 12112(a). At trial, the plaintiff requested that the district court instruct the jury that she could prevail if she proved that her disability was, "a motivating factor" in the decision to terminate her, which is consistent with the standard under Title VII.

7

*Lewis,* 681 F.3d at 314. On the other hand, the defendants urged the district court to instruct the jury that the plaintiff could only prevail if the employer's decision to terminate her was "solely because of" the plaintiff's disability, which is the standard under the Rehabilitation Act and consistent with the prevailing standard applied by the Sixth Circuit to ADA cases at that time. *Id*. Though the district court applied the standard endorsed by precedent, the Sixth Circuit ruled that neither standard was correct. Instead, the Sixth Circuit found that the Supreme Court's decision in *Gross* concerning the ADEA, "applies with equal force to the ADA." *Id*. at 318. The Court concluded that in the wake of *Gross*, "the ADEA and ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is the 'but-for' cause of the employer's adverse decision." *Id*. at 321.

## II

### A

So, the phrase "because of" has meant "a motivating factor," or "a substantial reason," or "a significant factor," or "solely because of," or the "but-for" cause of. Why? It is not because Congress has clearly defined the phrase beyond the clear meaning of the words. Instead, where the line is drawn appears to rest on the predilections of a particular judge or court. That is not how this is supposed to work.

Consider the policy implications of the different choices here. For example, choosing "a motivating factor" defines a class of persons subject to this criminal sanction that includes individuals that act for any number of reasons, some more significant or substantial than sexual orientation. And it could be the case that absent the more significant or substantial factor the physical assault would not have taken place at all.

Now consider what happens by invoking the words "significant" or "substantial". The class is narrowed. Those that are motivated by sexual orientation but not in a significant or substantial way are now outside the reach of the law. But again, "a" significant or substantial factor presupposes other significant or substantial factors that standing alone might very well have caused a physical assault absent the actors motivation relative to sexual orientation.

Finally, what about the use of the words "the reason"? Once more, the class narrows. Only those persons for which "the reason" for committing a physical assault is sexual orientation are now covered by the law. There may very well be other motivations, significant, substantial or otherwise, but none of them are enough to incite a physical assault.

In its proposed jury instructions, the government argued for the use of "a motivating factor" instruction but then at the charge conference announced that it would compromise on the use of "a substantial reason," or "a significant factor" instruction. Again, why? The back and forth on this point had the decided feel of a legislative mark-up session during a congressional session rather than a charge conference. The words here, "because of", must mean something concrete that is solid and unalterable from case to case to case. Otherwise, as noted, the trial judge becomes a one person policy shop deciding, what? How compelling the facts are of a particular case? Whether justice requires that a person lose their liberty if they had just a trace of hate in their heart, or, on the other hand, acted solely because of that hate and for no other reason? Whatever the strengths of the modern judiciary, we not only should not make such decisions, we are designed to be particularly bad at them.

Beyond concerns about judicial policy making, there is another dynamic at play here as well. While hate crime statutes have typically survived first amendment challenges [R. 129], an expansive interpretation of the statutory language could certainly raise constitutional questions.

9

Pursuing a person's motivation, expression or thought is suspect business in terms of Supreme Court jurisprudence. *Compare R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 378, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) (striking down an ordinance that was expressly directed at expression on First Amendment grounds) *with Wisconsin v. Mitchell*, 508 U.S. 476, 113 S. Ct. 2194, 2195, 124 L. Ed. 2d 436 (1993) (upholding a statute that enhanced a defendant's sentence when the victim was selected based on race). Ultimately, judges should be modest in their statutory work to avoid raising freedom of speech concerns.

B

Which brings us to the instruction actually given: "the substantial reason." Throughout the entire jury instruction process the government argued vigorously that the proper definition of "because of," had never been, and should never be, the "but-for" standard so clearly articulated in *Gross* and *Lewis*.

The actual teaching of these cases, claims the government, is that courts should use caution in applying the standard of one statutory scheme to another. As in *Lewis,* the government believes that courts should rely heavily on legislative history to uncover the intent of Congress as to the appropriate standard for each statute. And when it comes to the statutory history of the HCPA, the government concludes that the Congress intended to expand the applicability of § 245, and so a more narrow standard would be counter to this intent.

Not really, says the Sixth Circuit. In determining whether to apply the standard of Title VII or the Rehabilitation Act to the ADA, the Sixth Circuit concludes:

> *Gross* resolves this case. No matter the shared goals and methods of two laws, it explains that we should not apply the substantive causation standards of one antidiscrimination statute to other anti-discrimination statutes when Congress uses distinct language to describe the two standards. Just as we erred by reading the "solely" language from the Rehabilitation Act into the ADA based on the shared

10

> purposes and histories of the two laws, *supra* at 317, so we would err by reading the "motivating factor" language from Title VII into the ADA. Shared statutory purposes do not invariably lead to shared statutory texts, and in the end it is the text that matters.

*Lewis,* 681 F.3d at 318-19. The government asks the Court to import the standard from §245 but not the standard for the ADA or the ADEA. However, as *Lewis* concludes, courts should proceed cautiously when importing standards from other statutory schemes and should instead rely on the text of the statute. As demonstrated above, *Gross* defines "because of" according to its ordinary meaning and refuses to infer standards or exceptions from other statutes unless given specific direction by Congress to do so. *Lewis* applies that principle, not by importing the standard of the ADEA to the ADA, but in the absence of Congressional direction otherwise, defining "because of" consistent with its natural meaning in both laws.

Looking to the sections of legislative history provided this Court by the government does not change this analysis. In passing the HCPA, Congress did intend to expand the applicability of § 245, but it was very clear as to the two ways in which it intended to do so. First, the reach of the federal government's capacity to prosecute hate crimes under § 245 was limited to "hate-motivated violence in connection with the victim's participation in one of six narrowly defined 'federally protected activities.'" H.R. Rep. No. 11-86, at pg. *5 (2009). Second, § 245 "provide[s] little or no coverage whatsoever for violent hate crimes committed because of the victim's perceived sexual orientation, gender, gender identity, or disability." *Id.* Therefore, HCPA § 249 broadened § 245 by expanding federal jurisdiction beyond the "federally protected activities" and including additional prohibited reasons. However, Congress never mentions that it seeks to expand the reach of § 245 by altering the meaning of the words "because of" to lower the standard necessary to prove that element of the crime. In fact, at no point in the legislative

history provided by the government does Congress discuss the applicable standard at all. Therefore, despite the protests of the government, "but-for" emerges as the standard by which to best measure the "because of" language used in HCPA § 249.

Admittedly, it is a difficult task to choose words that convey the notion that just because a physical assault would not have occurred "but for" someone's sexual orientation does not necessarily mean that sexual orientation was the "sole" reason for that assault. But jury instructions often rest on the imperfect endeavor of describing the human condition. This is particularly true when it comes to trying to guide jurors in the task of ascertaining mental state. That is why we candidly admit that "Ordinarily, there is no way that a defendant's state of mind can be proved directly, because no one can read another person's mind and tell what that person is thinking." Sixth Circuit Pattern Jury Instruction 2.08(2).

And it is certainly the case that there is no direct evidence here as to the state of mind that fueled the assault on Kevin Pennington. As described in detail at sentencing, alcohol and drugs certainly played a role. [R. 189 at 2].[5] To a greater or lesser extent, each defendant's attitudes and habits had been formed by a culture of dysfunction, abuse, or violence. [*Id*. at 47-48].[6] Their relationships, or lack thereof, with the victim were complex and contradictory. [*Id*. at 3].[7]

---

[5] "Whether or not it was drugs that brought the Jenkinses to Kevin Pennington that night, the role of drugs in their encounter cannot be overlooked. Aside from Anthony Jenkins, each of the defendants were heavily addicted. Alexis and Ashley testified that they had ingested significant amounts of potent controlled substances on the night of the criminal activity. Jason Jenkins claims to have consumed thirty beers the same day. Even the victim, Kevin Pennington, admitted to significant drug abuse, and his involvement in the distribution of controlled substances." [R. 189 at 2].

[6] "Each defendant in this case grew up amid complete dysfunction in their families and homes. It was rare for the parents of these defendants to have attained any education or employment; and most accepted some form of government assistance. Tragically, most, though not all, of those who were supposed to stand as an example for these four defendants, to provide for them, to make them feel safe; instead, abused both drugs and those in their care." [R. 189 at 47-48].

[7] "According to Pennington, he only identified Anthony and Jason when Alexis turned on the dome light of the truck. He maintains that he would not have gotten in the vehicle had he known that Anthony and Jason were there because he feared them from a previous encounter wherein his friend was assaulted." [R. 189 at 3].

And, yes, there was admitted use of hate filled slurs aimed at Mr. Pennington's sexual orientation. [*Id*. at 18].[8] All of these factors were, presumably, at work here and weighed by the jury in fulfilling its difficult task.

In the end, therefore, this case stands for the rather unremarkable proposition that our actions are really never the consequence of one motivation. Congress could not have meant for "because of" to stand for the proposition that only when motivated by no other factors than sexual orientation should the law apply. That would fly in the face of common sense and what we know about human interaction. But, as discussed above, unless somehow modified by Congress, the plain meaning of the words "because of" must mean that the sexual orientation of the victim becomes a necessary prerequisite to the assault. That is a status reserved only for the most substantial of the motivating factors. There may be others of substance but, in the final analysis, sexual orientation must be *the* factor that motivates the conduct -- "the substantial factor".

### III

Other courts will no doubt wrestle with this same issue, reach similar conclusions, and rest on different, and perhaps better, language to communicate the meaning of those conclusions. That is the natural progression of the common law and the craft of being a judge.

This 2nd Day of July, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[8] "The Jenkinses transported him to a remote mountain in Kingdom Come State Park, where they beat him, taunted him with homosexual slurs, and threatened to kill him." [R. 189 at 18].